UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James W. Shaughnessy,<br><br>Plaintiff,<br><br>v.<br><br>Edward P. Southern, MD,<br><br>Defendant. | Case No. 20-cv-00709 (SRN/DTS)<br><br><br>**ORDER** |
| Tracy A. Dunbrook,<br><br>Plaintiff,<br><br>v.<br><br>Edward P. Southern, MD,<br><br>Defendant. | Case No. 20-cv-00710 (SRN/DTS) |

James W. Shaughnessy, 20 Sunset Terrace, West Hartford, CT 06107, Pro Se.

Tracy A. Dunbrook, 20 Sunset Terrace, West Hartford, CT 06107, Pro Se.

Gregory E. Karpenko and John Pavelko, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Edward Southern's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) [Doc. No. 7]. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** the motion.

1

**I.     BACKGROUND**

This is a medical malpractice action brought by James Shaughnessy and his wife, Tracy Dunbrook, arising out of treatment Shaughnessy received from Southern in Shanghai, China. (Compl. [Doc. No. 1] ¶ 7.)[1] Plaintiffs are citizens of Connecticut, and allege that Southern, although living in Texas, is a citizen of Minnesota. (*Id.* ¶ 5.)

Southern moves to dismiss under Federal Rule of Civil Procedure 12(b)(2), asserting that Minnesota does not have personal jurisdiction over him, and under the doctrine of *forum non conveniens*. In support of this motion, Southern filed declarations describing his personal and professional history. (*See* First Southern Decl. [Doc. No. 11]; Second Southern Decl. [Doc. No. 23].)

Southern was raised in a military family, and his parents traveled frequently before settling in Texas. (Second Southern Decl. ¶ 2.) His mother still lives in Texas, on property that has been owned by Southern's family since the 1860s, and his extended family lives in Houston, Texas. (*Id.*) Southern graduated from the Baylor College of Medicine in Houston, Texas in 1988. (First Southern Decl. ¶ 2.) Southern's medical career took him to Connecticut, then to Illinois, on to Wisconsin, and then to California. (*Id.* ¶¶ 3-4.) After leaving California in 2002, Southern lived and practiced in Minnesota until 2007. (*Id.* ¶ 5.) He and his wife bought property in Minnesota, which they still own. (*Id.* ¶ 6.) During his residency in Minnesota, Southern served on active military duty, and was deployed to Iraq

---

[1] Because the documents filed in these cases are identical, the Court will cite only to the 20-cv-00709 docket as a matter of convenience.

and Germany. (*Id.*) In 2007, Southern moved to Michigan, where he taught at Michigan State University and worked for a locum tenens company, which involved practicing medicine for brief periods of time in Michigan, Oklahoma, Colorado, and Minnesota. (*Id.* ¶ 7.) Southern's locum tenens work in Minnesota in 2012 was the last time he practiced medicine in the state. (*Id.*) In 2012, Southern traveled to China to work in Guangdong Province and Shanghai, before returning to New Orleans, Louisiana to work as an associate professor. (*Id.* ¶ 8.) From August 2013 to June 2018, Southern lived and worked in China. (*Id.* ¶¶ 8-15.) During this time, Southern treated Shaughnessy in China. (*Id.* ¶ 10.)

Southern left China in June 2018 to take a position at the University of Texas Medical Branch. (*Id.* ¶ 14.) However, due to a hiring freeze, the University of Texas postponed Southern's job offer. (*Id.*) From January 2018 to September 2018, Southern worked briefly in Michigan, stayed with one of his daughters in Los Angeles, California, spent three weeks in Minnesota, then visited family in Texas. (*Id.* ¶¶ 16-18.) In September 2018, he took a job at the Eglin Air Force Base in Florida. (*Id.* ¶¶ 14, 18.) Once Southern's job at the University of Texas became available in 2019, Southern moved from Florida to Texas. (*Id.* ¶ 19.) Southern still holds an active medical license in California, Colorado, Michigan, Minnesota, Oklahoma, Texas, Vermont, and Wisconsin. (*Id.* ¶ 20.)

After returning to Texas in 2019, in part to be closer to his mother after his father's passing, Southern began his work at the University of Texas. (Second Southern Decl. ¶¶ 2-3.) Southern is in the process of buying a home in Texas, and receives mail at his mother's address in Texas. (*Id.* ¶ 2.) He is an active member of the Texas Orthopedic Society, has held a Texas bank account since the 1980s, is registered to vote in Texas, owns a car

3

registered and insured in Texas, and is a member of a Texas church. (*Id.* ¶ 3.) When the University of Texas offered him the choice between a portable 403(b) retirement plan or a pension plan that required him to retire as a University of Texas employee, Southern chose the non-portable pension plan. (*Id.*) Southern has a Florida driver's license, and has attempted to obtain a Texas license but has had difficulty making the required appointment due to his work schedule. (*Id.* ¶ 4.)

Southern attests that he has "always considered Texas [his] home," and that he intends to live in Texas for the rest of his life. (*Id.* ¶ 2.) Prior to returning to Texas in 2019, Southern regarded Florida as his domicile, and before that, China. (*Id.* ¶ 5.) Southern lived in Minnesota from 2002 to 2007, and registered a consulting business in Minnesota—which is now inactive. (*Id.* ¶ 7.) He still owns real property in Minnesota, but gave up the homestead designation on that property for tax purposes after moving to China. (*Id.*) Although he sometimes visits the Minnesota property with his family, he has "no intention of moving back to Minnesota and living there for an extended period of time." (*Id.*)

In opposition to Southern's motion, Plaintiffs filed two declarations describing Southern's alleged contacts with Minnesota. (Dunbrook Decl. [Doc. No. 17]; Shaughnessy Decl. [Doc. No. 20].) Dunbrook attests that, while Shaughnessy received treatment from Southern in China, Southern mentioned that his wife remained at the family's home in Minnesota, where their daughter then attended high school. (Dunbrook Decl. ¶ 11.) When Plaintiffs filed a lawsuit against Southern in Connecticut in late 2018, they effected service

4

on Southern at his property in Minnesota.[2] (*Id.* ¶ 13; *id.*, Exs. A, B, C.) Plaintiffs submit several records from online sources, such as "idiCore" and WhitePages.com, which represent that Southern and his wife are "residents" at their house in Minnesota, and that Southern and his wife use cellphone and landline phone numbers with a Minnesota area code. (Shaughnessy Decl., Exs. F, J, M-P.)

## II.   DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must make a prima facie showing that the court's exercise of jurisdiction is proper. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The plaintiff may meet this burden by pleading facts sufficient to "support a reasonable inference that the defendant[] can be subjected to jurisdiction within the [forum] state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (citation omitted). This inference may be tested not only by the pleadings, but by any "affidavits and exhibits presented" with the motion. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (citation omitted). However, "the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support the conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). Where, as here, the Court has not held an evidentiary hearing on the motion, the Court

---

[2] In the instant case, Plaintiffs made several unsuccessful attempts to serve Southern at his Minnesota address, and ultimately served him in Texas. (*Id.* ¶ 14.)

"must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor." *Fastpath, Inc.*, 760 F.3d at 820.[3]

"A federal court may assume jurisdiction over a defendant in a diversity action if the forum State's long-arm statute permits the exercise of personal jurisdiction and that exercise is consistent with the Due Process Clause of the Fourteenth Amendment." *Creative Calling Sols., Inc.*, 799 F.3d at 979 (citation omitted). Minnesota's long-arm statute is co-extensive with federal due process requirements. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 570 (Minn. 2004). Accordingly, this Court has personal jurisdiction over Southern so long as due process is satisfied.

Personal jurisdiction may be either specific or general. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (quoting *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir.

---

[3] Although Plaintiffs are proceeding pro se, both Plaintiffs hold law degrees and Shaughnessy is a practicing attorney. (Shaughnessy Decl. ¶ 1; Dunbrook Decl. ¶ 1.) Consequently, the Court declines to hold Plaintiffs to a less stringent pleading standard or liberally construe the Complaint—beyond the extent otherwise required by Rule 12(b)(2). *See Ming'ate v. Bank of Am., N.A.*, No. CIV. 11-1787 (ADM/TNL), 2011 WL 4590431, at *1 (D. Minn. Sept. 30, 2011) ("Typically, pro se complaints are to be 'liberally construed,' and held to 'less stringent standards than formal pleadings drafted by lawyers.' Given this rationale for applying a less strict standard to pro se laypersons, courts have declined to extend 'less stringent standards and liberal construction' to pro se attorneys." (citations omitted)). Indeed, Plaintiffs do not request that the Court treat the Complaint as it typically would a pro se pleading filed by a layperson.

6

2008)). Here, Plaintiffs do not appear to assert that the Court has specific jurisdiction over Southern—nor could they, given that the events giving rise to Plaintiffs' cause of action occurred in China.

Rather, Plaintiffs assert that Southern is domiciled in Minnesota, and the Court may therefore exercise general jurisdiction. "The Due Process Clause permits the exercise of 'general jurisdiction' to hear 'any and all claims against' a defendant if [the defendant's] 'affiliations with the State are so continuous and systematic as to render [the defendant] essentially at home in the forum State.'" *Creative Calling Sols., Inc.*, 799 F.3d at 979 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). For an individual like Southern, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG*, 571 U.S. at 137. "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (citation omitted). One's domicile "is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *Vlandis v. Kline*, 412 U.S. 441, 454 (1973).

Viewing the evidence in the light most favorable to Plaintiffs and resolving all factual conflicts in their favor, the Court finds that Plaintiffs have not made a prima facie showing that jurisdiction is proper. Southern lived and worked in Minnesota from 2002 to 2007. (Second Southern Decl. ¶ 7.) Since then, he has lived and worked elsewhere, and traveled to Minnesota "only occasionally . . . on vacation and to visit family." (First Southern Decl. ¶ 6; Second Southern Decl. ¶ 5.) Southern attests that he intends to live in

7

Texas for the rest of his life, an intention borne out by Southern's employment at the University of Texas, his efforts to buy a home in Texas, his choice of a pension plan that cannot be transferred to another employer, his desire to live near his mother after his father's passing, the fact that he has registered to vote in Texas, the registration of his vehicle in Texas, and his membership in professional and religious organizations in Texas. (Second Southern Decl. ¶¶ 2-3, 14.)

Against this evidence, Plaintiffs point to Southern's ownership of real property in Minnesota. Plaintiffs make much of the fact that Southern's wife and daughter appear to live at that property, and that Southern was personally served at that address in connection with another lawsuit in 2018. (Mem. in Opp. to Mot. to Dismiss [Doc. No. 15], at 4-5, 10-11.) But Southern relinquished the homestead designation on that property for tax purposes, and attests that he visits it infrequently. (Second Southern Decl. ¶ 7 ("My family sometimes spends time in the Minnesota vacation home . . . . However, this is simply a vacation home.").) Plaintiffs also point to Shaughnessy's consulting business that was once registered in Minnesota, and the fact that he retains his Minnesota medical license. But Southern holds a medical license in several states besides Minnesota, he has not practiced in Minnesota since 2012, he did not renew his business license in 2018, and he has neither an office nor employees in Minnesota. (First Southern Decl. ¶¶ 6, 7, 20.) Finally, Plaintiffs note that several internet searches listed Southern and his wife as "residents" at the Minnesota property, and that their cellphone and landline phone numbers have a Minnesota area code. (Shaughnessy Decl., Exs. F, J, M-P.) Weighed against the significant evidence Southern has presented that Texas is now "his true, fixed and permanent home and place

of habitation," Plaintiffs' internet searches and Southern's phone number are inconsequential. *Vlandis*, 412 U.S. at 454.

Accordingly, the Court has neither general nor specific personal jurisdiction over Southern, and therefore grants Southern's Motion to Dismiss. Because the Court finds that it does not have personal jurisdiction, it need not consider Southern's invocation of the *forum non conveniens* doctrine.

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 7] is **GRANTED**. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 26, 2021                                  s/Susan Richard Nelson
                                                         SUSAN RICHARD NELSON
                                                         United States District Judge